Nicholas Schmitz
P.O. Box 8
Waterford CT 06385
(860) 625-4797
Manhattanmaverick47@gmail.com
Plaintiff in Pro Per

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

NICHOLAS SCHMITZ, an individual

Plaintiff

v.

PHILUX GLOBAL GROUP INC.;
A Wyoming Corporation
HENRY D. FAHMAN, an individual

Defendant

)
)
)
)
)
)
)

**Case No.** 8:24-cv-02554-JAK (JDEx)

NOTICE OF MOTION and
MOTION FOR DEFAULT JUDGMENT

Hearing Date:  March 24, 2025
Hearing Time:   8:30 a.m.
Judge : Honorable John A. Kronstadt
Location : Courtroom 10C

## TO THE HONORABLE COURT AND TO ALL PARTIES:

PLEASE TAKE NOTICE that on March 24, 2025 at 8:30 a.m.or as soon thereafter as this matter may be heard in the above-entitled Court located at First Street Courthouse 350 W. First St., Los Angeles CA 90012 Courtroom C, Nicholas Schmitz, the Plaintiff in this case will move this Court for a Default Judgment. This motion is based upon the Plaintiff's Complaint filed November 21, 2024, the Clerk of the Court's entry of Default entered on January 21, 2025, the Motion for Default Judgment, Declaration, the complete files and records in this action, and upon such oral and documentary evidence as may be allowed at the Hearing of this motion.

DATED:  February 3, 2025


_____

Nicholas Schmitz

Plaintiff in Pro Per

Nicholas Schmitz
P.O. Box 8
Waterford CT 06385
(860) 625-4797
Manhattanmaverick47@gmail.com
Plaintiff in Pro Per

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| NICHOLAS SCHMITZ, an individual<br><br>Plaintiff<br><br>v.<br><br>PHILUX GLOBAL GROUP INC.;<br>A Wyoming Corporation<br>HENRY D. FAHMAN, an individual<br><br>Defendant | **Case No.** 8:24-cv-02554-JAK (JDEx)<br><br>MOTION FOR DEFAULT JUDGMENT<br><br>Hearing Date:  March 24, 2025<br>Hearing Time:  8:30 a.m.<br>Judge :  Honorable John A. Kronstadt<br>Location : Courtroom 10C |

## TO THIS HONORABLE COURT AND ALL PARTIES

Pending before this Court is Plaintiff Nicholas Schmitz's (the Plaintiff) Motion for Default Judgment against Defendant(s) Philux Global Group Inc., a Wyoming Corporation, and Henry D. Fahman, an individual (collectively referred to as the "Defendants") pursuant to Rule 55(b)(2). The Plaintiff requests entry of Default Judgment against the Defendants and seeks a judgment requiring the Defendants to pay restitution representing the amounts agreed to be paid by the Defendants to the Plaintiff prior to the Defendant's breach of contracts, and alleged fraudulent and deceptive practices. After considering the Complaint and supporting documentation within, as well as the argument filed in support of this Motion, the Plaintiff humbly requests this Court GRANT the Plaintiff's

Motion for Default Judgment and related Orders as petitioned.

## BACKGROUND

**A. Factual Background**

1.  Philux Global Group Inc., a Wyoming Corp., is, and at all times was, a corporate entity purporting to be "engaged in mergers and acquisitions and invests in attractive businesses and select special situations with large, growing market potential that may generate extraordinary long-term shareholder value". PhiLux Global Group is a fully reporting company with the U.S. Securities and Exchange Commission and currently traded on the NASDAQ OTC markets under the symbol "PHIL"

2.  Henry D. Fahman, an individual, is, and at all times was, Chairman of the Board, President, and Acting Chief Financial Officer of PhiLux Global Group Inc. In his roles on behalf of PhiLux Global Group Inc. Mr. Fahman was the author, authorized representative, signatory, and is responsible for the acts complained of herein. Mr. Fahman, is effectively "the face of" and is "synonymous with" all aspects of PhiLux Global Group Inc.

3.  In an effort to fund operational needs of the company outside the more traditional means of equity procurement, Mr. Fahman resorted to issuing Private Promissory Notes and issuing Private Restricted Share Purchase Agreements to numerous shareholders who agreed to assist in advancement of the company's goals. More specifically, to assist in closing costs and transfer costs of purported business transactions already completed that would provide the company with immediate liquidity which in turn would allow for the repayment of the short-term loans.

4.  Mr. Fahman represented these corporate transactions as being true in conversation, text messages, in corporate "tweets", and by giving the appearance of credibility in SEC corporate filings. Moreover, Mr. Fahman went so far as to fabricate and privately circulate various documents in order to deceive potential investors into signing Private Agreement and Promissory Notes and the aforementioned Private Purchase Share Agreement contracts. Examples of such include, but are not limited to, doctored International Wire transfer invoices from foreign countries to the tune of $100,000,000, Airway Bills showing alleged shipments of

corporately acquired assets in Dubai, movement of assets in Vietnam, and billions of dollars in Asset Management Agreements between "Ultra High Net Worth Investors" and PhiLux Global Group Inc. some of which were not made known to the public. As a result investors, such as  the Plaintiff, were given more than reasonable cause to assist the Defendants with funding via the Private contracts.

4.   The Defendants were not able to meet the repayment terms of the Agreement and Promissory Notes as stipulated. As a result, the Plaintiff entered into a series of weekly "Amendments" with agreed upon incentive terms to continue the Promissory Notes. The Note Amendments were updated weekly from October 18, 2023 until August 20, 2024 at which time the Defendants ceased updating the Agreements and defaulted upon the Agreement and Promissory Notes. Despite numerous attempts by the Plaintiff to address the defaults, the Defendants took no action to make restitution thereby necessitating this action.

5.   Despite his representations to the contrary, Mr. Fahman did not close any financial packages, create any revenue, or obtain any funding thereby creating any value in which to meet repayment terms of the Agreements and Promissory Notes.

6.   The cumulative total of the seven Agreement and Promissory Notes addressed in the Complaint and issued at various dates beginning October 18, 2023 along with their respective weekly amendments until defaulted upon on August 20, 2024 is $3,109,145.00.

7.  In addition, the Plaintiff demonstrated additional Breach of Contract by the Defendants for the issuance of 300,000,000 (three hundred million) unencumbered shares of Philux Global Group Inc. stock traded under the symbol "PHIL" (*see Dkt No. 1, pgs.6-8, #s33-35* ).

8.   In the same manner the Defendants disregarded honoring the Agreements and contracts in which they entered, the Defendants have disregarded the Plaintiff's Complaint thereby necessitating this Motion for Default Judgment. Absent an entry of default judgment, the  Plaintiff would be prejudiced and without recourse against PhiLux Global Group Inc. a Wyoming Corp., and Henry D. Fahman, given the Defendants unwillingness to answer or defend this matter (*Vogel v. Rite Aid Corp.*, 992 F. Supp. 2d 998, 1006 (C.D. Cal. 2014).

**B. Procedural Background**

9.   On November 21, 2024 the Plaintiff Nicholas Schmitt, an individual, filed his Complaint alleging breach of contract, promissory fraud, intentional misrepresentation, and breach of fiduciary duty. (*see Dkt. No.1*)

10.   On December 3, 2024 the Plaintiff served the Defendants with the Complaint, the Summons, Notice of Related Cases, and a Notice of Interested Parties. The Plaintiff filed his Proof of Service on December 30, 2024 *(see Dkt. No. 9).*

12.   As Chairman of the Board, President, and Acting Chief Financial Officer of PhiLux Global Group Inc., Henry D. Fahman was recipient of the documents on behalf of PhiLux Global Group Inc. corporately. Henry D. Fahman was also, and redundantly, served as an individual on December 27, 2024. The Plaintiff filed his Proof of Service on December 30, 2024 (*see Dkt. No. 10*).

13.   The Defendants failed to answer the Complaint within the applicable timeframe and on January 19, 2025 the Plaintiff requested the Clerk for an Entry of Default *(see Dkt. No. 13).*

14.   The Clerk of the Court entered default against the Defendants on January 21, 2025 and January 24, 2025 *(see Dkt. Nos. 14,15).*

15.   The Defendants have acknowledged receipt of the Complaint and are aware of the Lawsuit. Although the Complaint was filed on November 21, 2024 and Mr. Fahman wasn't served via process sever until December 3, 2024 he was aware of the lawsuits via online stock chat  boards. The filing of the case was immediately made public via websites such as "Justia" and "Trellis" and subsequently disseminated through various well known investor chat boards and stock forums such as "Discord" and "StockTwits". Mr. Fahman was familiar with the use of these Private  investor chat rooms such as he would receive much of the Private funding from individuals in these private forums. Therefore, not only have the Defendants been aware of the Complaint but also each and every subsequent filing in this matter as each has been disseminated and discussed online in the aforementioned shareholder forums.

16.   Having been made aware of the filing of this Complaint, on November 22, 2024, Defendant Henry D. Fahman left a voicemail message with the Plaintiff eagerly requesting the

Plaintiff to "withdraw the lawsuit right away" that it "hinders and makes it impossible for us to close" (financial packages)... "we have one closing on Monday and one on Tuesday, Nicholas, but please withdraw the lawsuit right away so we can get the money and pay you, and with that they're not going to close"... "please withdraw that right away... if it is the way it is right now, we won't be able to do that and everybody will lose... everyone ! ".

17.   Further demonstrating awareness of the suit, on December 6, 2024, Mr. Fahman hosted a shareholder corporate conference call on behalf of PhiLux Global Group Inc. In this video conference call, which can be publicly viewed at

https://www.youtube.com/watchv=aT4jTBhQz7A Mr. Fahman acknowledges the lawsuits and the underlying breaches of the Restricted Shareholder Agreements and Notes and the need to rectify the situation. This occurs around the 37:00 mark of the 41:55 minute conference call. Both examples represent the fact that the Defendants are aware of the Complaint and filings, and are intentionally failing to respond, thereby lacking any excusable neglect.

## ARGUMENT

18.   This action has arisen from multiple Breaches of Contracts issued by Defendant Henry D. Fahman through Defendant PhiLux Global Group Inc, a Wyoming Corp. In his capacities as President, Chairman of the Board, and acting Chief Financial Officer he has full authority to enter into legally binding and enforceable contracts. The Private Agreements and Promissory Notes, and the Private Share Purchase Agreements at issue in this action represent valid Contracts.

19.   The Defendants offered, authored, and willingly into entered into the terms of the Contracts with the Plaintiff. The Plaintiff satisfied all requirements therein.

20.    The Defendants failed to repay the Plaintiff according to the terms set forth within and failed to do so within the timeframes agreed upon. This, therefore, represents a material breach.

21.    The Plaintiff has demonstrated substantive claims for damages for the breaches of the Contracts in the cumulative amount of $3,109,145.00.

22.    The Plaintiff also alleged promissory fraud, Intentional Misrepresentation, and Breach of Fiduciary Duty upon Henry D. Fahman. As described in the Complaint, Mr. Fahman purported false claims to encourage and coerce the Plaintiff to enter into the contracts with the Defendants. Mr. Fahman has repetitively acted in this manner on a larger scale with countless other investors over time. This deceptive and deceitful behavior to enrich himself through PhiLux Global Group Inc. in this manner, at the expense of unwitting investors, is disgraceful and therefore warrants the damages requested by the Plaintiff.

23.    Through discovery, it has been discovered Mr. Fahman has an extensive history of fraud and breach. His actions briefly exposed in this action are merely a part and parcel of greater schemes and offenses. To put this into perspective, in 2018 alone, Mr. Fahman issued over 64 short term Convertible Promissory Notes to various lenders for $573,366.00 and subsequently defaulted upon them all (SEC Form 10Q Quarterly Report March 31, 2019 pg. 17). This allowed the note holders to convert the Promissory Notes into over 6.3 billion shares of PhiLux Global Group Inc. common Stock. Those shares were then immediately sold into the open market significantly diluting shareholder value.

24.    Further evidence of Mr. Fahman's disregard for honoring Agreements and breach of contracts can be found in the numerous lawsuits filed against both he and his companies. In addition to the cases mentioned in pg. 35 of the Complaint, Mr. Fahman has has been sued for Breach of Contract in *Iruka Capital Group LLC v. PhiLux Capital Advisors Inc. Henry Dack Fahman, C2 Advance LLC v. PhiLux Capital Advisors Inc., Henry Dack Fahman, Novak Equities v. PhiLux Capital Advisors, Inc, Henry Dack Fahman, Apex Funding Source LLC v. PhiLux Capital Advisors Inc. PhiLux Global Group Inc. Henry Dack Fahman et. Al., ODK Capital LLC v. PhiLux Capital Advisors Inc. Henry D. Fahman (currently in Orange County Superior Court) and Steven Kelley, an individual v. PhiLux Global Group Inc., Henry D. Fahman, an individual (currently pending in this court as a "related case" 8:24-cv -02488-JAK-JDE)*

25.    These cases listed here within are but a mere sampling and not all inclusive of all of Mr. Fahman's breach of contracts. They serve only to demonstrate a continuing pattern of behavior.

26.  Mr. Fahman's history of issuing and then defaulting upon Convertible Promissory Notes continued into subsequent years through 2023 at which point he no longer garnered funds through toxic convertible notes. He instead began preying upon investors through the more lucrative Private Restricted Share Agreements and Private Promissory Notes that can more easily be disguised or even not disclosed in SEC corporate filings as exhibited in this Complaint.

27.  Mr. Fahman's history of dubious business practices stretches back to the turn of the century when, as a result of numerous unethical and illegal business practices, he was required to testify at Hearing on February 25, 2000 before the Permanent Subcommittee On Investigations of the Committee On Governmental Affairs in the United States Senate. Mr. Fahman was censured and disciplined that year by the National Association of Securities Dealers and permanently barred from ever exercising the privileges of being a broker-dealer in the industry.

28.  At the time Mr. Fahman was in charge of Providential Holdings Inc. Mr. Fahman committed to dissolve Providential Holdings Inc. as a result of the sanctions. Instead of ceasing operations however, he continued and instead changed Providential Holdings to Phi Global Group n/k/a PhiLux Global Group in February of 2009.

29.  The Defendants have apparently resurrected many of the same patterns of fraud from two decades ago. To better put into perspective how the fraud was perpetrated in relation to this Complaint, Mr. Fahman would contact private individuals via phone or text and promote a number of projects the company was attempting to accomplish. Whether it be his alleged contacts with Nvidia to place a chip manufacturing facility on the Saigon Silicon City project in Vietnam in which PhiLux Global Group was in partnership with, or working with Nissan to develop more energy efficient vehicles, Mr. Fahman would state that funding packages from various sources and/or individuals were imminent and/or complete. He would then solicit funds for various "fees, additional certifications, stamp tax fees, currency conversion fees, wire transfer fees, notarization of funds fees, as well as other items that he would allegedly need to pay for in order for the already promised funding to be released. In return, the released funding would be used to repay the investor. He would then issue the Private Promissory Notes or the

Private Restricted Share Agreements in exchange for funds to be wired to his various accounts.

30.    In some cases, Henry D. Fahman would even request funds sent via Western Union to various individuals in foreign countries he stated were "associates" and or "investors". As can be seen in Exhibit A of this Motion and as referenced in the Second Cause of Action for Promissory Fraud of the Complaint *(see Dkt. No. 1, pg. 12 #68),* Mr. Fahman produced a "classified" and notarized Banco de Espana wire transfer document showing a $100,000,000 (one hundred million dollar) transfer confirmation and submitted this privately to the Plaintiff. The wire transfer confirmation alleged funds had been transferred and released to Mr. Fahman's "Everbank" account in November 6, 2023 via the European Central Bank.

31.    Mr. Fahman would issue dozens of Private Promissory Notes collecting millions of dollars in funding while promising the notes would be immediately paid back to individual investors after the deposit cleared the PhiLux account. Unfortunately, no such wired funds from the Bank of Spain were ever received or recorded in corporate SEC filings.

32.    After several weeks the Defendants, in an effort to keep collecting monies from individuals, privately released further false documentation. As can be seen in Exhibit B to this Motion, the Defendants would leak another official looking document in the form of an " Irrevocable Payment Guarantee/Indemnity Investment Funding Amount US 100,000,000". This document was from the alleged "facilitator" banking firm Eco World Security Company in Madrid, Spain on November 23, 2023 guaranteeing the $100,000,000 deposit. Upon closer inspection, however, that document requests an "International Bank Transfer Processing and Closing Charge" of $32,520.00. As long as this fee was complied with, the release of the $100,000,000 would be completed. Mr. Fahman would then privately promote the "need" for additional funding via stock chat boards, texting, and the use of WhatsApp with individuals to obtain funds to complete that transaction. Mr. Fahman would once again state the Private loans to him would allow him to pay the fees to release the funding which, in turn,  would allow him to obtain the funds to repay the very Promissory Notes he would issue *(see Dkt No.1 Pgs. 19-25)* He would collect these same fees multiple times from multiple individuals.

33.    On December 14, 2023, after being unable to produce any $100,000,000 wire transfer

and after having already paid the requested "fees", Mr. Fahman once again produced yet another Eco World Security Company "Guarantee" and privately disseminated the document to deceive investors, such as the Plaintiff, in obtaining more funding. As can be seen in Exhibit C to this Motion, this document looks official, is stamped and notarized and is tailored to appear legitimate just as the document in Exhibit B was. Upon closer inspection of the text in this document, it once again guarantees the transfer of the $100,000,000 but only if a U.S $48,480.00 "Investment Funding Purpose Profiling Administrative Cost of Notarization and Stamp Duty Fee" was immediately paid. As before, further "funding" was privately requested by Mr. Fahman, and Private Agreements and Promissory Notes and dozens of Private Stock Purchase Agreements were issued for more than that needed sum. Additionally, both Exhibit B and Exhibit C "Guarantees" of the $100,000,000 stated that the fees would be reimbursed with accruable interest should the European Central Bank not complete the transfer. Despite these " fees" being submitted to Mr. Fahman multiple times over via numerous Private Agreements from multiple investors such as the Plaintiff, no transfer of $100,000,000 was ever made despite the "Classified" wire transfer confirmation and Eco World Security "Guarantees". Further, no fees were ever returned, and the whereabouts and usage of the monies transferred to Mr. Fahman have gone unaccounted for in numerous corporate SEC filings of PhiLux Global Group Inc.

34.   The documents produced by Mr. Fahman were fabricated to coerce the Plaintiff as well as dozens of other investors to intentionally misrepresent transactions in order to obtain funds. The underlying Promissory Notes and Private Share Purchase Agreements were, in return, simply defaulted upon. Given the authentic look of the documents, and coupled with Mr. Fahman's verbal assurance and multitude of daily texts, it was reasonable to assume the information provided by Mr. Fahman was accurate and that the Plaintiff and the other investors who followed suit would be repaid or refunded in the short term pursuant to the terms of the contracted terms and Agreements.

35.   The Defendants would continue to perpetuate the charade that the $100,000,000 Spain transfer was imminent, continue to mislead newer investors, and would simultaneously promote

1  numerous other investment package "deals" closing, all needing similar funding.

2  The Plaintiff is in possession of hundreds of texts and emails from Mr. Fahman many stating

3  that "funds have been transferred" or that Mr. Fahman had "received confirmation from the

4  senders bank, waiting for funds to be posted to our account".

5  36.   The Exhibits A through C here within are merely a few examples of the Defendants'

6  scheme and have been included for the sole purpose of bringing visibility to the Defendants'

7  actions as the likelihood of default, to avoid any criminal exposure through public trial, is high.

8  37.   In addition to the $100,000,000 Spain "financing" documents, the Defendants

9  promoted numerous other financial packages from other countries including, but not limited to

10  Turkey, Belgium, United Arab Emirates, Ghana, Angola, Australia, and Vietnam among others.

11  In each promotion, Mr. Fahman would issue the same type of Agreements and Promissory

12  Notes to individuals only to default on those as well.

13  38.  The Defendants would produce various "Asset Management Agreements" and circulate

14  these privately to mislead investors in obtaining funding via issuance of short-term loans (see

15  Exhibits D and E to this Motion). Mr. Fahman, at times, requested of the Plaintiff that

16  thousands of dollars even be wired to several non-corporate affiliated foreign individuals via

17  Western Union transfers to Monrovia, Liberia in conjunction with alleged "closing fee needs"

18  associated with the $285,000,000 financing package referenced in Exhibit E.

19  39.   Similarly, in a documented text exchange on February 14, 2024, Mr. Fahman solicited

20  several thousand dollars from another private investor. He requested the funds be wired to

21  himself via Western Union to his hotel in Dubai, and provided his passport number amongst

22  other personal information to complete the transaction. In the exchange the investor, Mr. Trever

23  Good, asks "do  I have your word that this will be repaid in 48 hours?". Mr. Fahman responded,

24  "Yes it will be repaid within that timeframe for sure. Thank you". Mr. Fahman stated he needed

25  the money to "pay the security escort to transport some high-value items". Mr. Fahman assured

26  Mr. Good that wiring him the funds would allow him to immediately close that investment

27  package thereby obtaining the funds to repay Mr. Good $54,098.00 which was already due him.

28  40.   These highly irregular means of obtaining corporate funds not only reeks of fraud in

both examples, but it should be noted that the Defendants'' actions include international wire transfers and working with multiple foreign actors in potential racketeering.

41.    The few examples and exhibits here within are but a tiny fraction of the hundreds of Private contracts issued and defaulted upon by the Defendants. Millions of dollars taken and not accounted for in an elaborate scheme perpetrated under the guise of a legitimate corporation. Countless investors have lost tens to hundreds of thousands of dollars apiece through the defaulted private Agreements and received nothing but false promises thereby necessitating the complaints before this court. (*See related case 8:24-cv-02488 JAK-JDE Steven Kelley, an individual vs. PhiLuxGlobal Group Inc. Henry D. Fahman* )

42.    The Plaintiff, Nicholas Schmitz, had previously given Mr. Fahman over $400,000.00 in funding via Private Stock Purchase Agreements. While the shares were delivered and registered with the transfer agent, Mr. Fahman failed to provide the necessary Attorney Opinion letter from the corporation to allow the Restricted shares to be released thereby rendering them worthless. The Plaintiff signed a shareholder letter demanding the Defendants rectify the situation *(see Dkt. No. 1 pgs. 35-37)*.

43.    In light of the more detailed examples of promissory fraud -false promise made by the Defendants, the Plaintiff has requested in his Complaint an additional $500,000 in damages (*see Dkt. No. 1, pg. 16 (2)(b))* in addition to the $3,109,645.00 for the Breach of Contracts.

44.    The Plaintiff's merit based substantive claims in this case for Breach of Contract have set forth clear claims for not only monetary relief, but also injunction against Henry D. Fahman from issuing any further Private Agreement and Promissory Notes or Private Stock Purchase Agreements. The Defendants were properly served, are aware of the Complaint, lack excusable neglect, have demonstrated blatant disregard for the Rule of Law, disregard for good faith dealings, repetitively engaged in deceptive practices without remorse, and demonstrated disrespect for fiduciary duty.

45.    Despite court's strong inclinations to decide cases on the merits (*Eitel* factors), granting a default judgment is appropriate when a defendant fails to adequately defend against a lawsuit (*see* e.g., *Wecosign 845, F. Supp2d at* 1083*; Craigslist, Inc. v. Naturemarket, Inc.*, 694 F. Supp.

2d1039, 1061 (N.D. Cal. 2010). Given the aforementioned reasons, and the Defendants' decision not to respond to the Complaint, any concerns this Court may have in regards to not deciding this case on the merits should be mitigated and not weigh against granting a default judgment.

46.    Additionally, "Although federal policy favors decisions on the merits, Rule 55(b)(2) permits entry of default judgment in situations such as this where defendants refuse to litigate." J & J Sports Prods, Inc. v. Concepcion, No. 10-CV-05092, 2011 U.S. Dist. LEXIS 60607, at *5, 2011 WL 2220101 (N.D. Cal. June 7, 2011). Thus, the general policy in favor of merits decisions is outweighed by the specific considerations made in this case. Without a default judgment, the Plaintiff would be left without recourse for equitable and monetary relief and thereby Prejudiced.

47.    In regards to the amounts involved, fraudulent conduct alleged is extensive and involves factoring payments of a defined sum. Notably, the amount of alleged payments due to the Plaintiff has not been disputed. All things considered; the amount requested does not weigh strongly against entry of default judgment.

48.    There is no dispute of material fact. The fact remains that regardless of the terms of the Agreement and Promissory Notes and their subsequent weekly amendments, they are valid and enforceable contracts. Henry D. Fahman not only signed these Agreements, but also referenced and acknowledged them for the amounts owed the Plaintiff in the corporation's SEC filings (*see Dkt. No.1 pg. 6*).  Any indication there is a dispute of material fact can weigh against entry of default judgment. But here, neither PhiLux Global Group Inc, or Henry D. Fahman has disputed any of the Plaintiff's factual contentions.

49.    Further, the Plaintiff has requested this court to enjoin Henry D. Fahman from issuing any further Private Agreement and Promissory Notes and/or Private Stock Purchase Agreements with individual investors on behalf of PhiLux Global Group Inc. or any other business in which Mr. Fahman is associated (*see Dkt. No. 1, pg. 16 (4)(a)).* Without injunctive relief against Henry D. Fahman, he will continue to issue and default upon hundreds of private contracts with countless other investors. Based on his past history of false representations and promissory note defaults, his pattern of fraud will go unabated thereby causing further financial harm to others.

1    The degree of scienter is high here.

2    50.   Said injunction against any and all Private issuances in any form would in no way

3    inhibit the Defendants from raising equity or funding via traditional means.

4    51.   By statute, the Court has the authority to grant this injunctive relief sought 15 U.S.C.

5    §53(b). An injunction may be granted "if there is some cognizable danger of recurring violation"

6    *FTC v. Gill,* 71 F Supp. 2d 1030, 1047 (C.D. Cal. 1999). A court considers the totality of the

7    Circumstances, including past unlawful conduct. *See id.  "When the violation has been*

8    predicated upon systemic wrongdoing, rather than isolated circumstances, a court should be

9    more willing to enjoin future conduct." *Id.* (quoting *CFTC v. Hunt*, 591 F.2d 1211, 1220 (7th Cir.1979)).

10   Here, in this case, the Court should consider the totality of the circumstances to determine the

11   likelihood of future violations, and find that the Plaintiff has established a reasonable likelihood

12   that Henry D. Fahman  will engage in future "fleecing" of investors through breaches of these

13   type of Private contracts based on false claims and misrepresentations.

14   52.   It should be noted that just as Henry D. Fahman is President, Chairman of the Board and

15   acting Chief Financial Officer. His wife, Tina Phan is acting Secretary and Treasurer and also a

16   member of the Board of Directors thereby leaving a wide berth for fraudulent activities with

17   little or no oversight. Other advertised Directors, and those of PhiLux Capital Advisors, have

18   been contacted numerous times in regards to these matters, however there has been no response.

19   It cannot be verified that there is even an active Board of Directors outside Henry D. Fahman and

20   his wife. There have been no annual shareholder meetings in several years whereby, according

21   to the company's charter, any Board of Directors has been properly elected and seated.

22   53.   The Defendants in this matter seek to avoid responsibility, accountability, and

23   answerability by not responding to this case thereby denying the Plaintiff the opportunity to

24   reveal the full extent and instances of fraud and damages to this court in open trial. In

25   questioning the validity of the allegations within the complaint and this Motion, it should be a

26   consideration that if a corporation legitimately had billions of dollars in "deals, nvestments, or

27   legitimate projects" pending, at the very least, the corporate attorney or Mr. Fahman would

28   have answered these  allegations and this complaint.

**CONCLUSION**

For the reasons stated above, the Plaintiff humbly requests this Court GRANT the Plaintiff's Motion for Default Judgment and issue Orders for the following relief:

A.   This Court enter a Judgment against the Defendants in favor of the Plaintiff in the amount of $3,109,145.00 plus Court costs in the amount of $504.00 (court filing fee, service of Summons) for a sum total of $3,109,649.00 in consideration for the Breach of Contracts.

B.   The Court enter a Judgment in favor of the Plaintiff for $500,000.00 in damages for Promissory Fraud and False Promise.

C.   The Court enter an Order of Injunction enjoining Henry D. Fahman from the issuance of any Private Agreements, Promissory Notes, Private Restricted Share Agreements, or the like by and/or through PhiLux Global Group Inc., a Wyoming Corporation, or any subsidiary, affiliate, or alter ego corporation.

D.   The Court enter An Order requiring Defendants to issue 300,000,000 shares of unencumbered and unrestricted shares of PhiLux Global Group Inc. within 10 days and provide an immediate, true, and  correct report to the SEC a current accounting of the actual outstanding share count within 30 days reflecting the full issuance and acknowledgment of all Private Restricted Share Purchase Agreements including the necessary Attorney Opinion Letters verifying the shares.

E.    The Court take any such action that it deems appropriate in this matter including, but not limited to criminal referral to the office of the U.S. Attorney and the SEC for investigation for fraud, conspiracy to commit bank fraud, international wire fraud, securities fraud, and impersonating  business contacts in order to distribute fraudulent financial information,

February 3  2025                                    Respectfully Submitted,


*Nicholas Schmitz*

Nicholas Schmitz

Plaintiff in Pro Per

EXHIBIT A

**BANCO DE ESPAÑA**
Eurosistema

Banco de España
C/ Alcalá, 48
28014 Madrid

Some services are located at:
C/ Alcalá, 522
28027 Madrid

Our Ref:  BDE/EN/IRD/$100M/09052/11/23
Date:     MONDAY, 6TH NOVEMBER, 2023



# COVER PAGE

ATTN:   **MR. HENRY FAHMAN**
(INVESTMENT FUND BENEFICIARY)
2323 MAIN STREET, IRVINE, 92614 CALIFORNIA,
UNITED STATES OF AMERICA.



| | |
|---|---|
| I/FOF: | **EVERBANK** |
| BANK ADDRESS: | 301 WEST BAY STREET, JACKSONVILLE, FL 32202 |
| ACCOUNT NAME: | PHILUX CAPITAL ADVISORS, INC. |
| BENEFICIARY ADDRESS: | 2323 MAIN STREET, IRVINE, 92614 CALIFORNIA, USA |
| ACCOUNT SIGNATORY NAME: | MR. HENRY FAHMAN |
| ACCOUNT NUMBER: | 86012xxxx |
| ROUTING NUMBER: | 063000225 |
| BANK SWIFT CODE: | EVBKUS3MXXX |

THRU:   **EUROPEAN CENTRAL BANK**
KAISERSTRASSE 29 D-60311
FRANKFURT AM MAIN GERMANY

ORIGIN:   **INVESTMENT FUNDING**

FACE VALUE:   US$100,000,000.00
IN WORDS:     ONE HUNDRED MILLION UNITED STATES DOLLARS



Page 1 of 2

**BANCODE ESPAÑA**
Eurosistema

Banco de España
C/ Alcalá, 48
28014 Madrid

Some services are located at:
C/ Alcalá, 522
28027 Madrid

## SETTLEMENTS ADVICE

(50)SOFT-COPIE                         SRV INPRINT 4 QNT                              06/11/2023

Message:   BDE22009912203362133      : PYC-SOFT     Nature:  SWT      Type
MUR:       BDE22009912203362133      : PYC- D/E     Network: Prior:   N

HEADER FROM:
Banco de España
Address:Calle de Alcalá
48 Madrid, 28014, Spain

RELEASED:  06/11/2023                 10:45:38        BY:BSF2482       Motif:    xxx

**HEADERS CORRESPONDENT:**
European Central Bank
Kaiserstrasse 29 D-60311
Frankfurt am Main Germany



Requested by : BSF6407     Message status     Message confirmed    Arc
....................................MT760:  Message Test....................... . ....

To:
BANK NAME:           EVERBANK
BANK ADDRESS:        301 WEST BAY STREET, JACKSONVILLE, FL 32202
ACCOUNT NAME:        PHILUX CAPITAL ADVISORS, INC.
ADDRESS:             2323 MAIN STREET, IRVINE, 92614 CALIFORNIA, USA
ACCOUNT SIGNATORY:   MR. HENRY FAHMAN
ACCOUNT NUMBER:      860122352
ROUTING TRANSIT NO:  063000225
SWIFT CODE:          EVBKUS3MXXX

MT760: CUSTOMER TRANSFER:              PHILUX CAPITAL ADVISORS, INC.
(20) TRANSACTION REFERENCE NUMBER:     3211900
(21) RELATED REFERENCE:                CEO1UNEG5020562911



ADVICE DATE:             6TH  NOVEMBER, 2023
CURRENCY CODE(a)         US$100,000,000.00
CURRENCY CODE(b)         €93,119,702.70

CONVERSION RATE          US$1 to €0.931073
TOTAL AMOUNT:            US$100,000,000.00

(32B) VALIDITY DATE:     8TH NOVEMBER, 2023
(50) ORDERING CUSTOMER:  ECO WORLD SECURITY COMPANY, MADRID, SPAIN
BENEFICIARY BANK:        EVERBANK
BENEFICIARY'S NAME:      PHILUX CAPITAL ADVISORS, INC.
ACCOUNT SIGNATORY NAME:  MR. HENRY FAHMAN

(27A) DETAILS OF CHARGES: US$22,890.00

            DDT: CONFIRMED,   CONFIRMED,     CONFIRMED

            END SOFT- COIPES




3211900

Page 2 of 2

# EXHIBIT B


## ECO WORLD
## SECURITY COMPANY

23rd November, 2023

To: **MR. HENRY FAHMAN**
*(Approved Fund Beneficiary)*
2323 Main Street, Irvine, 92614 California,
United States of America.

Credit in Favour:



**Philux Capital Advisors, Inc.**
Account #: 0850135516
with EverBank
301 West Bay Street, Jacksonville, FL 32202, USA
Account Signatory Name: **Mr. Henry Fahman**

Sir,

## SUB: IRREVOCABLE PAYMENT GUARANTEE/INDEMNITY
## INVESTMENT FUNDING AMOUNT: US$100,000,000.00.

We hereby irrevocably Guarantee and indemnify you in accordance with bank guideline and Deposit Guarantee Law, General Provisions Chapter 1:Article 1, the following law must apply Guaranteed deposit-monies in any currency held in an account of a client of a deposit taker which the deposit taker shall pay out in accordance with the provisions of law.

The Article 5 Section A unavailability of beneficiary/depositor to pay bank fee or that the court has taken a decision on insolvency of the deposit based on this bank regulations as you pay the US$100,000,000.00(One Hundred Million United States Dollars) new Bank Account: **0850135516 International Bank Transfer Processing and Closing Charges** in favour of the above details amounting to US$32,520.00 (Thirty Two Thousand, Five Hundred and Twenty United States Dollars).We agree and guarantee to pay the beneficiary (Mr. Henry Fahman) on receipt of your demand by way of transfer in favour US$100,000,000.00(One Hundred Million United States Dollars) only without any further proof or condition. Partial Draws are prohibited, Multiple Draws are prohibited. We are advice you to pay the US$100,000,000.00 (One Hundred Million United States Dollars) **International Bank Transfer Processing and Closing Charges** in favour of the above details amounting to US$32,520.00 to enable the release and transfer of your fund into the new profiled bank account: 0850135516 with EverBank, 301 West Bay Street, Jacksonville, FL 32202, USA

Following this development, in accordance with the legal regulation of law guiding our banker, we also guarantee with our position in this **ECO WORLD SECURITY MADRID SPAIN** that your fund must be release to the above stated new account in EVERBANK and mission executed as long as you comply with the International Bank **Transfer Processing and Closing Charges**. There shall be no bill in respect of this same issue. We guarantee you that **ECO WORLD SECURITY COMPANY MADRID, SPAIN** will be responsible to reimburse you all you paid with accruable interest if European Central Bank fails to release your fund without further delays.

On behalf of our board of Directors, I quote, this Confirmation Letter/Guarantee possess all legal rights /qualities and should be accepted by you.

Yours Sincerely

**Dr. John Edward**
CEO, Eco World Security Company,
Madrid , Spain.



**Ms. Vivian Peters**
Secretary Eco World Security Co.
Madrid , Spain.



EXHIBIT C

# ECO WORLD SECURITY COMPANY

14th December, 2023

To: **Mr. Henry Fahman**
**(Approved Fund Beneficiary)**
2323 Main Street, Irvine, 92614 California,
United States of America.

**Mr. Hieu Minh Nguyen**, President/CEO
Saigon Silicon City JSC
**(Investment Commitment)**
Lot I6 & I7, Road D1, Saigon High Technology
Park Long Thanh My Ward, District 9,
Ho Chi Minh City, Vietnam

Credit in Favour:
**Philux Capital Advisors, Inc.**
Account #: **0850135516**
with EverBank ,301 West Bay Street, Jacksonville, FL 32202, USA
Account Signatory Name: **Mr. Henry Fahman**

Sirs,

### SUB: IRREVOCABLE PAYMENT GUARANTEE/INDEMNITY
**INVESTMENT FUNDING AMOUNT: US$100,000,000.00(One Hundred Million United States Dollars)**

We hereby irrevocably Guarantee and indemnify you in accordance with bank guideline and Deposit Guarantee Law, General Provisions Chapter 1: Article 1, the following law must apply Guaranteed deposit-monies in any currency held in an account of a client of a deposit taker which the deposit taker shall pay out in accordance with the provisions of law.

The Article 5 Section A unavailability of beneficiary/depositor to pay bank fee or that the court has taken a decision on insolvency of the deposit based on this bank regulations as you pay the US$100,000,000.00(One Hundred Million United States Dollars)Bank Account: **0850135516** Investment Funding Purpose Profiling Administrative Cost of Notarisation and Stamp duty Fees in favour of the above details amounting to US$48,480.00 (Forty Eight Thousand, Four Hundred and Eighty United States Dollars).We agree and guarantee to pay the beneficiary (Mr. Henry Fahman) on receipt of your demand by way of transfer in favour US$100,000,000.00(One Hundred Million United States Dollars) only without any further proof or condition. Partial Draws are prohibited, Multiple Draws are prohibited. You are advised to pay the US$100,000,000.00 Investment Funding Purpose Profiling Administrative Cost of Notarisation and Stamp duty Fees in favour of the above details amounting to US$48,480.00 to enable the release and transfer of your fund into the profiled bank account **0850135516** with EverBank, 301 West Bay Street, Jacksonville, FL 32202, USA for further investment in Saigon Silicon City project.
.
Following this development, in accordance with the legal regulation of law guiding our banker, we also guarantee with our position in ECO WORLD SECURITY MADRID SPAIN that your fund must be release to the above stated account in EVERBANK and mission executed as long as you comply with the Investment Funding Purpose Profiling Administrative Cost of Notarisation and Stamp duty Fees. There shall be no bill in respect of this same issue. We guarantee you that ECO WORLD SECURITY COMPANY MADRID, SPAIN will be responsible to reimburse you all you paid with accruable interest if European Central Bank fails to release your fund without further delays.

On behalf of our board of Directors, I quote, this Confirmation Letter/Guarantee possess all legal rights /qualities and should be accepted by you.
Yours Sincerely



Yours Sincerely
Dr. John Edward
CEO, Eco World Security Company,
Madrid , Spain.



Ms. Vivian Peters
Secretary,Eco World Security Co.
Madrid , Spain.

# EXHIBIT D

## ASSET MANAGEMENT AGREEMENT

**THIS ASSET MANAGEMENT AGREEMENT** (this "Agreement") is made this 10th day of February 2024 between PHILUX CAPITAL ADVISORS, INC., a Wyoming corporation, Registration ID 2017-000769482, with principal registered address at 30 N. Gould Street, Suite R, Sheridan, WY 81802, U.S.A., represented by Henry D Fahman, its Chairman and Chief Executive Officer, Passport Number 673752683, issued by the United States Department of State on March 25, 2021 (hereinafter referred to as **"THE MANAGER"**) and Ibrahim Abdul Salman, an individual, date of birth May 12, 1986, Passport Number 669751999, issued by the United States Department of State on August 2, 2022, with principal address at 228E 46th Street, Suite 502, New York, USA (hereinafter referred to as **"THE INVESTOR"**). The MANAGER and the INVESTOR hereinafter are referred to individually as a "Party", and collectively as the "Parties".

## W I T N E S S E T H

**WHEREAS** the INVESTOR desires to avail itself of the knowledge, experience, sources of information, advice, assistance and certain facilities available to the MANAGER and to have the MANAGER undertake the duties and responsibilities hereinafter set forth, on behalf of, and subject to the supervision of the INVESTOR or his duly designated agent, all as provided herein; and

**WHEREAS** the MANAGER is willing to undertake to render such services, subject to the supervision of the INVESTOR or his duly designated agent, on the terms and conditions hereinafter set forth.

**WHEREAS** the INVESTOR is vested with all rights, title and interest in funds that have been designated by the INVESTOR for use in investing in businesses and projects contemplated by the INVESTOR and/or to be recommended by the MANAGER, to be approved by the INVESTOR or its duly designated agent (the "Investment Projects"), and desires to grant MANAGER the authority to manage the investments in the Investment Projects; and

**WHEREAS** the INVESTOR agrees to transfer a total of **One Hundred Million U.S. Dollars (USD 100,000,000)**, hereinafter referred to as the "Investment Fund," in one or more tranches to an account or accounts to be designated by the MANAGER (the "Designated Account" as detailed in attached Exhibit A to this Agreement) and the MANAGER agrees to manage the Investment Fund for the purposes and in accordance with the terms and conditions set forth in this Agreement.

ASSET MANAGEMENT AGREEMENT
PHILUX CAPITAL ADVISORS, INC.
IBRAHIM ABDUL SALMAN

1

EXHIBIT E

## ASSET MANAGEMENT AGREEMENT

**THIS ASSET MANAGEMENT AGREEMENT** (this "Agreement") is made this 30th day of July 2024 between PHILUX GLOBAL GROUP, INC., a Wyoming corporation, Registration ID 2017-000769478, with principal registered address at 30 N. Gould Street, Suite R, Sheridan, WY 81802, U.S.A., represented by Henry D Fahman, its Chairman and Chief Executive Officer, (hereinafter referred to as "**THE MANAGER**") and Maxime Dongo, an individual, with principal address at Avenue 4 de Fevereiro 105, CP Luanda, Angola, with power of attorney to represent Mr. Jose Maria Botelhos de Vasconcelos, residing at Rua 3 da Missao, Luanda, Angola (hereinafter referred to as "**THE INVESTOR**"). The MANAGER and the INVESTOR hereinafter are referred to individually as a "Party," and collectively as the "Parties".

### W I T N E S S E T H

**WHEREAS** the INVESTOR desires to avail itself of the knowledge, experience, sources of information, advice, assistance and certain facilities available to the MANAGER and to have the MANAGER undertake the duties and responsibilities hereinafter set forth, on behalf of, and subject to the supervision of the INVESTOR or his duly designated agent, all as provided herein; and

**WHEREAS** the MANAGER is willing to undertake to render such services, subject to the supervision of the INVESTOR or his duly designated agent as may be needed, on the terms and conditions hereinafter set forth.

**WHEREAS** the INVESTOR is vested with all rights, title and interest in funds that have been designated by the INVESTOR for use in investing in businesses and projects contemplated by the INVESTOR and/or to be recommended by the MANAGER, to be approved by the INVESTOR or its duly designated agent (the "Investment Projects"), and desires to grant MANAGER the authority to manage the investments in the Investment Projects; and

**WHEREAS** the INVESTOR agrees to transfer a total of **Two Hundred Eighty Five Million Five Hundred Fifty Thousand U.S. Dollars (USD 285,550,000.00)**, hereinafter referred to as the "Investment Fund," in one or more tranches to an account or accounts to be designated by the MANAGER (the "Designated Account" as detailed in attached Exhibit A to this Agreement) and the MANAGER agrees to manage the Investment Fund for the purposes and in accordance with the terms and conditions set forth in this Agreement.

**NOW THEREFORE**, in consideration of the terms and covenants of this Agreement as hereinafter set forth, the Parties hereby agree as follows:

### A. APPOINTMENT

The INVESTOR hereby appoints the MANAGER to serve as his advisor on the terms and conditions set forth in this Agreement, and the MANAGER hereby accepts such appointment.



## <u>DECLARATION OF PLAINTIFF</u>

I, Nicholas Schmitz, declare as follows :

1.    I am the Plaintiff in this action. If called as a witness, I could and would competently testify thereto.

2.    Defendants PhiLux Global Group Inc., a Wyoming Corporation, and Henry D. Fahman in his capacity as Chairman of the Board, President, and acting Chief Financial Officer of said corporation were served pursuant to Rule 4 of the Federal Rules of Civil Procedure on December 3, 2024 as evidenced by the proof of service on file with this court. In addition, and redundantly, Henry D. Fahman was served as an individual pursuant to the California Code of Civil Procedure on December 27, 2024 as evidenced by the proof of service on file with this court.

3.    Under Rule 12, Defendants PhiLux Global Group Inc., a Wyoming Corporation, and Henry D. Fahman, an individual, was required to plead or otherwise respond to the complaint by January 17, 2025. The time to plead or otherwise respond to the complaint has not been extended by any agreement of the parties or any order of the Court.

4.    Defendants PhiLux Global Group Inc., a Wyoming Corporation, and Henry D. Fahman, an individual, and the responsible representative for that corporation, failed to serve or file a pleading or otherwise respond to the complaint. The applicable time limit for responding to the complaint has expired.

5.    Defendants PhiLux Global Group Inc., a Wyoming Corporation, and Henry D. Fahman, an individual, are not minors nor incompetent.

6.    Defendants PhiLux Global Group Inc., a Wyoming Corporation, and Henry D. Fahman, an individual, are not currently in the military service, and therefore, the Servicemembers Civil Relief Act does not apply.

7.    An entry of default by the clerk was entered on January 21:and January 24, 2025.

8.    A Motion for Default Judgment has been filed on February 3, 2025

I declare under penalty of perjury that the foregoing is true and correct.

Executed on February 3, 2025 in Waterford, Connecticut.


*Nicholas Schmitz*

Nicholas Schmitz

Plaintiff in Pro Per

**PROOF OF SERVICE BY MAIL**

I, Nicholas Schmitz, declare as follows:

On February 3, 2025, I served the documents described as :

1.   Motion for Default Judgment

2.   Declaration of Plaintiff

On all interested parties in this action by placing a true and correct copy thereof in a sealed

Envelope, with first class postage prepaid thereon, and deposited said envelope in the

United States mail in Waterford, CT.

addressed to:

Philux Global Group Inc.,

   17011 Beach Blvd Suite 900

   Huntington Beach CA 92647

Henry D. Fahman, Director PhiLux Global Group Inc.

   C/o Registered Agents 30 N Gould St. Suite R

   Sheridan WY 82801


   I declare under penalty of perjury that the foregoing is true and correct.


Executed on February 3, 2025 at Waterford, CT




*Nicholas Schmitz*

Nicholas Schmitz

Plaintiff in Pro Per