UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 8:24-cv-02554-JAK (JDEx) | Date | September 05, 2025 |
| Title | Nicholas Schmitz v. Philux Global Group Inc. et al. | | |

| | |
|---|---|
| Present: The Honorable | JOHN A. KRONSTADT, UNITED STATES DISTRICT JUDGE |
| Daniel Torrez | Not Reported |
| Deputy Clerk | Court Reporter / Recorder |
| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
| Not Present | Not Present |

**Proceedings:** **(IN CHAMBERS) ORDER RE PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT (DKT. 17)**

## I. Introduction

On November 21, 2024, Nicholas Schmitz ("Schmitz" or "Plaintiff") brought this action against Philux Global Group Inc. ("Philux") and Henry D. Fahman ("Fahman") (collectively, "Defendants"). Dkt. 1. The Complaint advances the following causes of action:

1. Breach of contract;
2. Promissory fraud;
3. Intentional misrepresentation; and
4. Breach of fiduciary duty.

*Id.* ¶¶ 36–93.

Philux and Fahman were served with copies of the Complaint and summons on December 3, 2024 and December 23, 2024, respectively, and corresponding proofs of service were filed on December 30, 2024. Dkts. 9, 10. After Defendants failed to respond to the Complaint, Plaintiff requested the entry of default as to Defendants. Dkt. 13. The default as to Fahman was entered by the Clerk on January 21, 2025. Dkt. 14. The default as to Philux was entered by the Clerk on January 24, 2025, pursuant to Fed. R. Civ. P. 55(a). Dkt. 15. On February 3, 2025, Plaintiff filed a Motion for Default Judgment against Defendants (the "Motion"). Dkt 17.

In accordance with Local Rule 7-15, a determination was made that the Motion could be decided without oral argument, and it was taken under submission. Dkt. 18. For the reasons stated in this Order, the Motion is **GRANTED-IN-PART** and **DENIED-IN-PART**.

## II. Background

### A. The Parties

It is alleged that Plaintiff is a Connecticut resident. Dkt. 1 ¶ 6.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 8:24-cv-02554-JAK (JDEx) | Date | September 05, 2025 |
| Title | Nicholas Schmitz v. Philux Global Group Inc. et al. | | |

It is alleged that Philux is a Wyoming corporation whose principal executive office is in Huntington Beach, California. *Id.* ¶ 7. It is alleged that Fahman is domiciled in Huntington Beach, California. *Id.* ¶ 4. It is alleged that Fahman served as Philux's "Chairman of the Board, President, and Acting Chief Financial Officer," during the relevant timeframe. *Id.* ¶ 8. It is alleged that Fahman "was the architect, authorized representative, signatory, and is responsible for" the acts of Philux that gave rise to the Complaint. *Id.* ¶ 9.

    B.    Substantive Allegations in the Complaint

The Complaint alleges that Plaintiff and Defendants entered into a series of contracts (collectively, the "Agreements"). *Id.* ¶¶ 12–30, 33–34.

    1.    <u>Contract 1</u>

It is alleged that Plaintiff and Defendants executed an agreement and promissory note on or about October 18, 2023 ("Contract 1"). *Id.* ¶ 11. Contract 1 provides that Plaintiff will lend Philux $24,000 and in exchange:

> For value received, Borrower [Philux] agrees to pay Lender [Plaintiff] the principal amount of $24,000 plus $10,800 in originating, administrative and processing fees, which is equal to 45% of the principal amount, and $60 wire transfer fees, on October 25, 2023. In the event Borrower is unable to pay this amount to Lender on or prior to October 25, 2023, Borrower agrees to pay Lender a penalty amount equal to 400% of the principal amount upon demand.

*Id.* ¶ 12.

It is alleged that Plaintiff performed all obligations required under the written terms of Contract 1. *Id.* ¶ 41.

It is alleged that Defendants failed to "meet the repayment terms" of Contract 1. *Id.* ¶ 13. It is alleged that Plaintiff, in response to a request by Defendants, agreed to a series of weekly "amendments" to Contract 1. *Id.* ¶ 14. It is alleged that these weekly amendments continued successively for a period of 44 weeks until August 20, 2024, at which time Defendants allegedly defaulted. *Id.* ¶ 15. It is alleged that, at the time of default, the agreed repayment amount was $610,860. *Id.*

    2.    <u>Contract 2</u>

It is alleged that Plaintiff and Defendants executed an additional agreement and promissory note on or about October 19, 2023 ("Contract 2"). Dkt. 1 ¶ 16. Contract 2 provides that Plaintiff will lend Philux $7000 and in exchange:

> For value received, Borrower [Philux] agrees to pay Lender [Plaintiff] the principal amount of $7,000 plus $3,150 in originating, administrative and processing fees, which is equal to 45% of the principal amount, and $30 wire transfer fees, on October 25, 2023. In the event Borrower is unable to pay this amount to Lender on or prior to October 25, 2023, Borrower

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 8:24-cv-02554-JAK (JDEx) | Date | September 05, 2025 |
| Title | Nicholas Schmitz v. Philux Global Group Inc. et al. | | |

agrees to pay Lender a penalty amount equal to 400% of the principal amount upon demand.

*Id.* ¶ 17. It is alleged that Plaintiff performed all obligations required under the written terms of Contract 2. *Id.* ¶ 47. It is alleged that Plaintiff and Defendants entered into a series of weekly amendments to Contract 2. *Id.* ¶ 44. It is alleged that these weekly amendments continued successively for a period of 44 weeks until August 20, 2024, at which time Defendants allegedly repudiated Contract 2. *Id.* ¶¶ 44–45. It is alleged that, at the time of repudiation, the agreed repayment amount was $178,530. *Id.* ¶ 45.

   3.  <u>Contract 3</u>

It is alleged that Plaintiff and Defendants executed an additional agreement and promissory note on or about November 14, 2023 ("Contract 3"). Dkt. 1 ¶ 21. Contract 3 provides that Plaintiff will lend Philux $6000 and in exchange:

> For value received, Borrower [Philux] agrees to pay Lender [Plaintiff] the principal amount of $6,000 plus $2,100 in originating, administrative and processing fees, which is equal to 35% of the principal amount, and $30 wire transfer fees one week from today, i.e. November 21, 2023. In the event Borrower is unable to pay this amount to Lender on or prior to November 21, 2023, Borrower 3 agrees to pay Lender a penalty amount equal to 400% of the principal amount by November 28, 2023.

*Id.* ¶ 22. It is alleged that Plaintiff performed all obligations required under the written terms of Contract 3. *Id.* ¶ 53.

It is alleged that Plaintiff, in response to a request by Defendants, agreed to a series of weekly "amendments" to Contract 3. *Id.* ¶ 24. It is alleged that these weekly amendments continued successively for a period of 40 weeks until August 20, 2024, at which time Defendants allegedly defaulted on Contract 3. *Id.* ¶ 25. It is alleged that, at the time of default, the agreed repayment amount was $147,630. *Id.*

Contracts 1, 2 and 3 each provides that Philux "agrees to pay all costs and expenses, including reasonable attorney's fees, in case incurred by [Plaintiff] in collection of any amount due under this [Agreement]." *Id.* at 19, 23, 27.

   4.  <u>Additional Contracts</u>

It is alleged that Plaintiff and Defendants entered into four additional agreements and promissory notes on unspecified dates for the following, respective amounts: $12,500; $20,000; $15,000; and $15,000 (the "Additional Contracts"). *Id.* ¶ 27. It is alleged that the parties entered into amendments to the Additional Contracts that resulted in a total amount of $2,112,125. *Id.* ¶ 30. The Additional Contracts are not appended to the Complaint.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 8:24-cv-02554-JAK (JDEx) | Date | September 05, 2025 |
| Title | Nicholas Schmitz v. Philux Global Group Inc. et al. | | |

    5.  <u>Contract 4 and Shares Amendment</u>

It is alleged that Plaintiff and Defendants entered into an additional agreement and promissory note on February 7, 2024 ("Contract 4"). *Id.* ¶ 33. Contract 4 is not appended to the Complaint. An amendment to Contract 4 is appended to the Complaint (the "Shares Amendment"). *Id.* at 33. The Shares Amendment states that, under Contract 4, Plaintiff provided the principal amount of $10,000 to Philux, and in exchange Philux agreed to pay Plaintiff "the principal amount of $10,000 plus 50% in originating, administrative and processing fees," and if both amounts "were not paid in full by February 9, 2024, the additional penalties would be 100% of the cumulative unpaid amounts until paid in full by Monday February 12, 2024." *Id.* The Shares Amendment further states that, after that date, "the penalties would be 500% of the cumulative unpaid amounts and would be due on Friday February 16, 2024." *Id.*

The Shares Amendment provides that Philux "agrees to issue…to [Plaintiff]…sixty million (60,000,000) shares of unencumbered, free-trading Philux Global Group Inc.'s Common Stock" with a par value of $0.001. *Id.* The Shares Amendment states that if Philux fails to issue the shares by March 31, 2024, Philux will owe Plaintiff a "penalty of 400% of the original shares to be issued." *Id.* The Complaint alleges that Philux did not issue the shares by the agreed upon date, which has caused $60,000 in damages to Plaintiff. *Id.* ¶ 62.

    6.  <u>Additional Allegations in the Complaint</u>

It is alleged that, while negotiating the Agreements with Plaintiff, Fahman told Plaintiff that the loans in the Agreements were needed to pay the costs and fees necessary to secure the closing of a "certain financial package from Spain," valued at $100,000,000. *Id.* ¶ 68. It is alleged that, upon the closing of the financial package, the $100,000,000 would "provide the necessary liquidity to repay" the Agreements. *Id.* It is alleged that Fahman knew these representations were false and made the representations "for the purpose of inducing [Plaintiff] into immediately providing" payment to Philux. *Id.* ¶ 70. It is alleged that, at the time these representations were made, Plaintiff "was not cognizant of the true facts and believed the representations to be true." *Id.* ¶ 71. It is alleged that Fahman made these representations to Plaintiff "orally, via texts, and through the production of various documents," including: International Banking documents representing the closing and transfer of the Spain investment package, Airway Bills for the shipments of assets related to corporate funding, Tax Certificates, U.N. Certificates, International Transfer Stamp Tax forms, as well as private Bills of Lading." *Id.* ¶ 72. It is alleged that "no Spain, or other alleged investment packages had closed." *Id.* ¶ 74. It is further alleged that each extension of the Agreements "was predicated upon the continuance of the false and fraudulent representations" by Fahman. *Id.* ¶ 76.

It is further alleged that Fahman, acting as the authorized representative of Philux, "represented as fact to [Plaintiff] that certain corporate events, communications with [t]hird party companies, financial package closings, and investments in the company by ultra-high net worth investors were true." *Id.* ¶ 79. It is alleged that Fahman, as a director and/or officer of Philux, owed several duties to the Company's stockholders, and he breached this duty by failing "to put the interests of [Philux]" before his own and "routinely mismanaging" Philux. *Id.* ¶¶ 85–88.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 8:24-cv-02554-JAK (JDEx) | Date | September 05, 2025 |
| Title | Nicholas Schmitz v. Philux Global Group Inc. et al. | | |

  C. Remedies Sought in the Complaint

Plaintiff seeks the following remedies: (1) monetary damages of $3,109,145, which is alleged to be the total amount of the value of all contracts plus interest; (2) punitive and exemplary damages; (3) injunctive relief; and (4) an award of attorney's fees and costs. *Id.* at 16–17.

**III.** **Analysis**

  A. Service of Process

    1. Legal Standards

A court must determine whether there was sufficient service of process on the party whose default was entered and against whom default judgment is requested. *See Mason v. Genisco Tech. Corp.*, 960 F.2d 849, 851 (9th Cir. 1992). Where service is improper, it is unnecessary to resolve whether there is personal jurisdiction over a defendant. *See Omni Cap. Int'l, Ltd. v. Rudolf Wolff & Co.*, 484 U.S. 97, 104 (1987) ("Before a federal court may exercise personal jurisdiction over a defendant, the procedural requirement of service of summons must be satisfied."); *see also Swanson Painting Co. v. Painters Loc. Union No. 260*, 391 F.2d 523, 524 (9th Cir. 1968) ("In the case of a party outside the state where the district court is located . . . there are two requisites to the acquiring of personal jurisdiction. The first is the obtaining of effective service of process. The second is existence of sufficient contacts between the party and the forum state so that the maintenance of the suit does not offend traditional notions of fair play and substantial justice.").

"[S]ervice of process in a federal action is covered generally by Rule 4 of the Federal Rules of Civil Procedure." *Omni Cap. Int'l*, 484 U.S. at 104. "[S]ervice of process must also comport with constitutional notions of due process" by being " 'reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.' " *Rio Props., Inc. v. Rio Int'l Interlink*, 284 F.3d 1007, 1016–17 (9th Cir. 2002) (quoting *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950)).

Pursuant to Fed. R. Civ. P. 4(e)(2), an individual may be served in a United States judicial district by delivering a copy of the summons and of the complaint to the individual personally, leaving a copy of each at the individual's dwelling or usual place of abode with someone of suitable age and discretion who resides there, or delivering a copy of each to an agent authorized by appointment or by law to receive service of process. In general, domestic or foreign corporations, partnerships or other unincorporated associations may be served in the same manner as an individual or by delivering a copy of the summons and the complaint to an officer, managing or general agent, or any other agent designated to receive service of process. Fed. R. Civ. P. 4(h)(1)(A)–(B).

    2. Application

A registered agent of Philux was served by personal service on December 3, 2024. Dkt. 9 at 2. Fahman was redundantly served by certified mail with return receipt. Dkt. 10 at 2. For these reasons, there has been adequate service of process as to all Defendants.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 8:24-cv-02554-JAK (JDEx) | Date | September 05, 2025 |
| Title | Nicholas Schmitz v. Philux Global Group Inc. et al. | | |

    B.    Jurisdiction

        1.    <u>Legal Standards</u>

> When entry of judgment is sought against a party who has failed to plead or otherwise defend, a district court has an affirmative duty to look into its jurisdiction over both the subject matter and the parties . . . . To avoid entering a default judgment that can later be successfully attacked as void, a court should determine whether it has the power, i.e., the jurisdiction, to enter the judgment in the first place.

*In re Tuli,* 172 F.3d 707, 712 (9th Cir. 1999) (citations omitted). The moving party has the burden to establish that a court has personal jurisdiction over a defendant or other non-responsive party when seeking a default judgment against that party. *See Mattel, Inc. v. Greiner & Hausser GmbH*, 354 F.3d 857, 862 (9th Cir. 2003) (the plaintiff "bears the burden of establishing the district court's personal jurisdiction over the Defendants"); *Los Angeles Turf Club Inc. v. US Racing*, No. 2:21-cv-08303-FWS-DTB, 2024 WL 5423013, at *2 (C.D. Cal. Oct. 18, 2024) (citing cases).

Unless a federal statute governs whether there is personal jurisdiction, a district court applies the law of the forum state in making that determination. *Boschetto v. Hansing*, 539 F.3d 1011, 1015 (9th Cir. 2008). California's long-arm statute is co-extensive with federal standards. *Id.* (citing *Panavision Int'l L.P. v. Poeppen*, 141 F.3d 1316, 1320 (9th Cir. 1988)). Accordingly, a federal court may exercise personal jurisdiction if doing so comports with federal constitutional due process. *Id.*

"Federal courts are courts of limited jurisdiction, possessing only that power authorized by Constitution and statute." *Gunn v. Minton*, 568 U.S. 251, 256 (2013) (quoting *Kokkonen v. Guardian Life Ins. Co. of Amer.*, 511 U.S. 375, 377 (1994) (internal quotation marks omitted)). Accordingly, federal courts only have original jurisdiction in civil actions in which (1) there is a federal question; or (2) there is complete diversity of citizenship between the parties and the amount in controversy exceeds $75,000. *See* 28 U.S.C. §§ 1331, 1332. Under 28 U.S.C. § 1367(a), a district court may exercise supplemental jurisdiction over a claim so long as it is part of the same case or controversy in which the court has original jurisdiction as to one or more other claims.

        2.    <u>Application</u>

Personal jurisdiction over Defendants has been shown because Philux's principal place of business is located in Huntington Beach, California, and its key officers, including Fahman, direct, control, and coordinate Philux's activities from that office. Dkt. 1 ¶¶ 4, 7. Further, Fahman is allegedly domiciled in California. *Id.* ¶ 4. Because Defendants have "certain minimum contacts" with the state of California, exercising jurisdiction over them does not "offend traditional notions of fair play and substantial justice." *Calder v. Jones*, 465 U.S. 783, 788 (1984).

Subject matter jurisdiction is also satisfied. Pursuant to 28 U.S.C. § 1332, there is diversity jurisdiction over the action. *First*, there is complete diversity because Plaintiff is a citizen of Connecticut, Philux is a citizen of Wyoming and a citizen of California, and Fahman is a citizen of California. Dkt 1 ¶¶ 4, 6. *Second*, the amount in controversy exceeds $75,000 because Plaintiff is seeking $3,109,145 in damages. *Id.* at 16.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 8:24-cv-02554-JAK (JDEx) | Date | September 05, 2025 |
| Title | Nicholas Schmitz v. Philux Global Group Inc. et al. | | |

    C.    Default Judgment

        1.    <u>Legal Standards</u>

            a)    Procedural Requirements for Default Judgment

Local Rule 55-1 requires that a party moving for default judgment submit a declaration or include information regarding each of the following: (1) when and against what party the default was entered; (2) the identification of the pleading to which default has been entered; (3) whether the defaulting party is an infant or incompetent person, and if so, whether that person is represented by a general guardian, committee, conservator or other representative; (4) that the Servicemembers Civil Relief Act, 50 U.S.C. app. § 521 does not apply; and (5) that notice has been served on the defaulting party, if required by Fed. R. Civ. P. 55(b)(2).

            b)    Substantive Standards for Entry of Default Judgment

Under Fed. R. Civ. P. 55(b), a trial court has discretion with respect to whether a default judgment should be entered. *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980). The entry of default does not alone warrant or require the entry of a default judgment. *Id*. The Ninth Circuit has established seven factors that may be considered in determining whether a default judgment is appropriate. *Eitel v. McCool*, 782 F.2d 1470, 1471–72 (9th Cir. 1986). They are: (1) the possibility of prejudice to the plaintiff; (2) the merits of plaintiff's substantive claim; (3) the sufficiency of the complaint; (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect; and (7) the strong policy favoring decisions on the merits. *Id*. "The general rule of law is that upon default the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true." *Geddes v. United Fin. Grp.*, 559 F.2d 557, 560 (9th Cir. 1977).

        2.    <u>Application</u>

            a)    Procedural Requirements

Plaintiff has satisfied the procedural requirements of Local Rule 55-1. In support of the Motion, Plaintiff provides a declaration ("Schmitz Decl."). Dkt. 17 at 28–29. Plaintiff declares that the Complaint is the pleading to which Defendants have not responded and as to which their defaults were entered on January 21, 2025, and January 24, 2025. *Id*. at 28 ¶¶ 3, 7. Plaintiff further declares that Defendants are not infants or incompetent persons and Defendants are not subject to the Servicemembers Civil Relief Act. *Id*. at 28 ¶¶ 5, 6. Although Plaintiff was not required to provide Defendants with notice of the Motion under Fed. R. Civ. P. 55(b)(2) because Defendants have not appeared in this action, Plaintiff declares that notices of the Motion were served on Defendants by first-class U.S. mail. *Id*. at 30.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 8:24-cv-02554-JAK (JDEx) | Date | September 05, 2025 |
| Title | Nicholas Schmitz v. Philux Global Group Inc. et al. | | |

      b)    *Eitel* Factors

          (1)    <u>The Possibility of Prejudice</u>

A plaintiff will be prejudiced if, absent the entry of a judgment, that plaintiff will be left without a remedy. *See Philip Morris USA, Inc. v. Castworld Prods., Inc.*, 219 F.R.D. 494, 499 (C.D. Cal. 2003) ("Plaintiff would suffer prejudice if the default judgment is not entered because Plaintiff would be without other recourse for recovery."), *overruled on other grounds by*, *SunEarth, Inc. v. Sun Earth Solar Power Co., Ltd.*, 839 F.3d 1179 (9th Cir. 2016); *PepsiCo v. Cal. Sec. Cans*, 238 F. Supp. 2d 1172, 1177 (C.D. Cal. 2002) ("If Plaintiffs' motion for default judgment is not granted, Plaintiffs will likely be without other recourse for recovery."). Due to Defendants' failure to appear or participate in this litigation, Plaintiff will suffer prejudice unless a default judgment is entered because there would not be a remedy. Therefore, the first *Eitel* factor weighs in favor of granting the Motion.

          (2)    <u>The Merits of Plaintiff's Substantive Claim and the Sufficiency of the Complaint</u>

The second and third *Eitel* factors overlap because a plaintiff must properly state a claim, and the allegations in the complaint are deemed true. Thus, if the complaint is sufficient, a plaintiff's substantive claim has merit for purposes of a request for the entry of a default judgment. *See PepsiCo*, 238 F. Supp. 2d at 1175; *see also Danning v. Lavine*, 572 F.2d 1386, 1388 (9th Cir. 1978) (allegations in the complaint must state a claim upon which the plaintiff may recover).

              (a)    Breach of Contract Claims

                  (i)    <u>Legal Standards</u>

                        (a)    Choice of Law

"A federal court sitting in diversity must look to the forum state's choice of law rules to determine the controlling substantive law." *Zinser v. Accufix Rsch. Inst., Inc.*, 253 F.3d 1180, 1187 (9th Cir. 2001).

In contract disputes, the California Supreme Court has adopted a "strong policy favoring enforcement" of choice-of-law provisions. *Nedlloyd Lines B.V. v. Superior Court*, 3 Cal. 4th 459, 465–66 (1992). Under this policy, a choice-of-law provision will be enforced so long as it is not "contrary to a *fundamental* policy of California," and the chosen state has a substantial relationship to the parties or their transaction or there is any other reasonable basis for the choice of law. *Id.* at 466.

Absent a choice-of-law provision, California follows one of two choice-of-law tests: Cal. Civ. Code § 1646, which sets forth a statutory test, and the general governmental interest analysis test. *Costco Wholesale Corp. v. Liberty Mut. Ins. Co.*, 472 F. Supp. 2d 1183, 1197–98 (S.D. Cal. 2007).

Under California Civil Code § 1646, "[a] contract is to be interpreted according to the law and usage of the place where it is to be performed; or, if it does not indicate a place of performance, according to the law and usage of the place where it is made." A contract is "made" in the place of acceptance. *ABF Cap. Corp. v. Grove Properties Co.*, 126 Cal. App. 4th 204, 222 (2005).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 8:24-cv-02554-JAK (JDEx) | Date | September 05, 2025 |
| Title | Nicholas Schmitz v. Philux Global Group Inc. et al. | | |

The governmental interest analysis involves three steps:

> First, the court determines whether the relevant law of each of the potentially affected jurisdictions with regard to the particular issue in question is the same or different. Second, if there is a difference, the court examines each jurisdiction's interest in the application of its own law under the circumstances of the particular case to determine whether a true conflict exists. Third, if the court finds that there is a true conflict, it carefully evaluates and compares the nature and strength of the interest of each jurisdiction in the application of its own law "to determine which state's interest would be more impaired if its policy were subordinated to the policy of the other state," and then ultimately applies "the law of the state whose interest would be the more impaired if its law were not applied."

*Kearney v. Salomon Smith Barney, Inc.*, 39 Cal. 4th 95, 107–08 (2006) (quoting *Bernhard v. Harrah's Club*, 16 Cal. 3d 313, 320 (1976) (in bank) (citation omitted), *superseded by statute on other ground*, Cal. Stats. 1978, ch. 929, § 2, at 2904).

(b)     Breach of Contract

Under California law, the elements of a claim for breach of contract are: "(1) the existence of the contract; (2) plaintiff's performance or excuse for nonperformance; (3) defendant's breach; and (4) damages caused by the breach." *Miles v. Deutsche Bank Nat'l Tr. Co.*, 236 Cal. App. 4th 394, 402 (2015) (quoting *CDF Firefighters v. Maldonado*, 158 Cal. App. 4th 1226, 1239 (2008)).

Under Wyoming law, the elements of a claim for breach of contract are: (1) a lawfully enforceable contract; (2) an unjustified failure to timely perform all or any part of what is promised therein; and (3) entitlement of injured party to damages. *Halling v. Yovanovich*, 391 P.3d 611, 616–17 (Wyo. 2017).

Under Connecticut law, the elements of a claim for breach of contract are: (1) the formation of an agreement; (2) performance by one party; (2) breach of the agreement by the other party; and (4) damages. *Meyers v. Livingston*, 311 Conn. 282, 291 (2014).

(ii)     Application

None of the contracts that is appended to the Complaint contains a choice-of-law provision. Thus, it must be determined whether California, Wyoming or Connecticut law applies.

It is alleged that "[t]he events giving rise to the plaintiff's claims occurred within this district," and that Defendants "conduct business" in this district. Dkt. 1 ¶ 3. Further, because both Defendants are allegedly "domiciled" in California, it is determined for the purposes of choice-of-law analysis that the contracts were "made" in California. *ABF Cap.*, 126 Cal. App. at 222. Further, under the governmental interest analysis, the elements of a claim of breach of contract are not meaningfully different in California, Wyoming or Connecticut. For these reasons, California law applies to all of Plaintiff's breach of contract claims.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 8:24-cv-02554-JAK (JDEx) | Date | September 05, 2025 |
| Title | Nicholas Schmitz v. Philux Global Group Inc. et al. | | |

(a) Contract 1

The allegations in the Complaint, which are taken as true upon the entry of a default, are sufficient to establish that Defendants breached Contract 1. *First*, the Complaint alleges that Plaintiff and Defendants executed a valid and enforceable contract on October 18, 2023, which was subsequently amended in exchange for adequate consideration. Dkt. 1 at 19, 21. *Second*, the Complaint alleges that Plaintiff performed as stipulated in Contract 1 by wiring $24,000 to Defendants on October 18, 2023. *Id.* ¶¶ 12, 41. *Third*, the Complaint alleges that Defendants failed to pay the amount stipulated in the last amended agreement or to request another extension. *Id.* ¶¶ 15, 39. *Fourth*, the Complaint alleges that Plaintiff has suffered monetary harm, *i.e.*, damages because of Defendants' breach. *Id.* ¶ 42. Therefore, the Complaint sufficient pleads all four elements of a claim for breach of contract as to Contract 1.

(b) Contract 2

Similarly, the allegations in the Complaint are sufficient to establish that Defendants breached Contract 2. *First*, the Complaint alleges that Plaintiff and Defendants executed a valid and enforceable contract on October 19, 2023, which was subsequently amended in exchange for adequate consideration. Dkt. 1 at 23, 25. *Second*, the Complaint alleges that Plaintiff performed as stipulated in Contract 2 by wiring a payment of $7000 to Defendants on October 19, 2023. *Id.* ¶¶ 18, 47. *Third*, the Complaint alleges that Defendants failed to pay the amount stipulated in the last amended agreement or to request another extension. *Id.* ¶¶ 20, 45. *Fourth*, the Complaint alleges that Plaintiff has suffered monetary harm, *i.e.*, damages because of Defendants' breach. *Id.* ¶ 48. Therefore, the Complaint sufficient pleads all four elements of a claim for breach of contract as to Contract 2.

(c) Contract 3

The allegations in the Complaint are sufficient to establish that Defendants breached Contract 3. *First*, the Complaint alleges that Plaintiff and Defendants executed valid and enforceable contract on November 14, 2023, which was subsequently amended in exchange for adequate consideration. Dkt. 1 at 27, 29. *Second*, the Complaint alleges that Plaintiff performed as stipulated in Contract 3 by wiring a payment of $6000 to Defendants on November 14, 2023. *Id.* ¶¶ 23, 53. *Third*, the Complaint alleges that Defendants failed to pay the amount stipulated in the last amended agreement or to request another extension. *Id.* ¶¶ 25, 51. *Fourth*, the Complaint alleges that Plaintiff has suffered monetary harm, *i.e.*, damages because of Defendants' breach. *Id.* ¶ 54. Therefore, the Complaint sufficient pleads all four elements of a claim for breach of contract as to Contract 3.

(d) Contract 4 and Shares Amendment

The allegations in the Complaint are insufficient to establish that Defendant breached Contract 4. *First*, the Complaint does not allege the date on which Contract 4 was executed, nor does it include allegations as to the specific terms of Contract 4. *Second*, the Complaint does not allege that Plaintiff performed all terms under Contract 4. *Third*, the Complaint does not specifically allege the breach or repudiation by Defendants of Contract 4. *Finally*, the Complaint does not include the unique alleged damages as to Contract 4.

The Complaint does include specific allegations as to the breach of the Shares Amendment. *First*, the Complaint alleges that Plaintiff and Defendants executed a valid and enforceable contract on February

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 8:24-cv-02554-JAK (JDEx) | Date | September 05, 2025 |
| Title | Nicholas Schmitz v. Philux Global Group Inc. et al. | | |

16, 2024. Dkt. 1 ¶ 59; *see also* Dkt. 1 at 33. *Second*, the Complaint alleges that Plaintiff performed all obligations required under the terms of the Shares Agreement. Dkt. 1 ¶ 61. *Third*, the Complaint alleges that Defendants failed to honor the provisions and terms of the Shares Agreement by failing to issue shares within the stipulated timeframe. *Id.* ¶ 60. *Fourth*, the Complaint alleges that Plaintiff has suffered monetary harm, *i.e.*, damages due to Defendants' breach. *Id.* ¶ 62. Therefore, the Complaint sufficiently pleads all four elements of a claim for breach of contract as to the Shares Amendment.

(e) Additional Contracts

Plaintiff does not successfully plead breach of contract as to the Additional Contracts in which he allegedly loaned Defendants $12,500, $25,000, $15,000, and $15,000, respectively. The Complaint alleges that the parties entered into the Additional Contracts but does not include the dates on which they were executed nor the specific terms of those agreements. *See* Dkt. 1 ¶ 55. Thus, these allegations are insufficient to state a claim for breach of contract because Plaintiff has not pleaded the "specific terms of the contract[s]." *A.B. Concrete Coating Inc. v. Wells Fargo Bank, N.A.*, 491 F. Supp. 3d 727, 735 (E.D. Cal 2020).

(b) Promissory Fraud Claim

(i) Legal Standards

Promissory fraud is a subspecies of fraud and deceit in which "a defendant fraudulently induces the plaintiff to enter a contract." *Lazar v. Superior Court*, 12 Cal. 4th 631, 638 (1996). To state a claim for promissory fraud, a plaintiff must show "(a) misrepresentation (false representation, concealment, or nondisclosure); (b) knowledge of falsity (or 'scienter'); (c) intent to defraud, i.e., to induce reliance; (d) justifiable reliance; and (e) resulting damage." *Beckwith v. Dahl*, 205 Cal. App. 4th 1039, 1060 (2012) (quoting *Lazar*, 12 Cal. 4th at 638).

"Like all fraud claims, a promissory fraud claim must be pleaded with particularity pursuant to Federal Rule of Civil Procedure 9(b)." *Singh v. Amguard Ins. Co.*, No. CV 16-618 PSG (AJWX), 2016 WL 7469641, at *2 (C.D. Cal. Apr. 1, 2016). To be pleaded with particularity, allegations of fraud must "be specific enough to give defendants notice of the particular misconduct . . . so that they can defend against the charge and not just deny that they have done anything wrong." *Semegen v. Weidner*, 780 F.2d 727, 731 (9th Cir. 1985).

(ii) Application

The Complaint advances a claim of promissory fraud as to the Agreements. Dkt. 1 ¶ 68. The allegations in the Complaint, which are taken as true upon the entry of a default, are insufficient to establish a claim for promissory fraud because the Complaint does not allege that Defendants "fraudulently induced" Plaintiff into entering a contract. *Lazar*, 12 Cal. 4th at 638.

The Complaint alleges that Fahman made representations on behalf of Philux that were false at the time they were made for the purposes of inducing Plaintiff into providing Philux the various payments under the Agreements. Dkt. 1 ¶ 70. The Complaint alleges that Fahman knew these representations were false, but Plaintiff was ignorant of the true facts, believed the representations to be true and relied

Case 8:24-cv-02554-JAK-JDE   Document 21   Filed 09/05/25   Page 12 of 19   Page ID #:125

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | 8:24-cv-02554-JAK (JDEx) | Date | September 05, 2025 |
|---|---|---|---|
| Title | Nicholas Schmitz v. Philux Global Group Inc. et al. | | |

on the representations by delivering payment. *Id.* ¶¶ 70–71. The Complaint further alleges that Plaintiff suffered damages in the amount of $3,109,145 because of these representations. *Id.* ¶ 76.

The vague and conclusory allegations in the Complaint are insufficient to show that Defendants knew of the falsity of the representations and made these representations with the "intent to defraud." *Beckwith*, 205 Cal. App. 4th at 1060. The Complaint alleges that Plaintiff was led to believe that the funds he provided would be "used for the costs and various fees necessary to secure funding from the closing of a certain financial package from Spain that would provide [Defendants] the sum of $100,000," which would in turn be used to repay Plaintiff. *Id.* ¶ 68. However, the Complaint does not plead facts that, if true, prove that Defendants did not intend to pay Plaintiff the money owed under the Agreements at the time they were executed. The Complaint alleges that "no Spain, or other alleged investment packages had closed," however, Plaintiff does not provide any evidence to support this allegation, nor does Plaintiff demonstrate that Defendants could not have upheld their obligations under the Agreements by repaying Plaintiff from some other funding source. *Id.* ¶ 74.

For these reasons, the Complaint fails to sufficiently allege a claim for promissory fraud.

(c) Intentional Misrepresentation

(i) Legal Standards

"The essential elements of a count for intentional misrepresentation are (1) a misrepresentation, (2) knowledge of falsity, (3) intent to induce reliance, (4) actual and justifiable reliance, and (5) resulting damage." *Chapman v. Skype Inc.*, 220 Cal. App. 4th 217, 230–31 (2013).

Intentional misrepresentation is a fraud-based claim and is therefore subject to the same heightened pleading standards as promissory fraud. *See Khalil v. Allstate Ins. Co.*, No. 22-CV-09409-MCS-JEM, 2021 WL 8315159, at *6 (C.D. Cal. June 28, 2021).

(ii) Application

The Complaint advances a claim of intentional misrepresentation against Defendants as to the Agreements. Dkt. 1 ¶ 81. The allegations in the Complaint, which are taken as true upon the entry of a default, are insufficient to show that Defendants intentionally misrepresented facts pertaining to the Agreements.

While the Complaint alleges that Plaintiff "reasonably relied on the representations made by Mr. Fahman" and suffered "financial harm" as a result, *id.* ¶¶ 82–83, the Complaint does not sufficiently allege that "defendant made a false representation intended to induce action by the plaintiff." *Alexander v. Meduna*, 47 P.3d 206, 211 (Wyo. 2002).

The Complaint alleges that Defendants "represented as fact" to Plaintiff that "communications with third party companies, financial package closings, and investments in the company by ultra-high net worth investors were true." Dkt. 1 ¶ 79. In support of the Motion, Plaintiff argues that Fahman represented that these investments were occurring "in conversation, text messages, in corporate 'tweets', and . . . in SEC corporate filings." Dkt. 17 at 4.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 8:24-cv-02554-JAK (JDEx) | Date | September 05, 2025 |
| Title | Nicholas Schmitz v. Philux Global Group Inc. et al. | | |

Plaintiff has not appended any of the referenced text messages or corporate tweets to the Complaint or in support of the Motion. In the absence of supporting evidence, these conclusory allegations are insufficient to support a claim of intentional misrepresentation because Defendants' intent and the reasonableness of Plaintiff's reliance cannot be evaluated. Further, given the heightened pleading standards required for a claim of intentional misrepresentation, the allegations in the Complaint are lacking in specificity and are insufficiently pleaded.

For these reasons, the Complaint fails to sufficiently allege claims of intentional misrepresentation as to the Agreements.

(d) Breach of Fiduciary Duty

(i) Legal Standards

Officers and directors owe a fiduciary duty to stockholders. *Small v. Fritz Cos., Inc.*, 30 Cal. 4th 167, 179 (2003). "The elements of a cause of action for breach of fiduciary duty are: (1) existence of a fiduciary duty; (2) breach of the fiduciary duty; and (3) damage proximately caused by the breach." *Gutierrez v. Girardi*, 194 Cal. App. 4th 925, 932 (2011) (quoting *Stanley v. Richmond*, 35 Cal. App. 4th 1070, 1086 (1995)).

Claims against corporations by shareholders can be derivative or direct in nature. *See Bader v. Anderson*, 179 Cal. App. 4th 775, 801 (2009). Derivative claims are those where the injury is to the corporation. *Id.* at 793. To bring a derivative claim, shareholders either must make demand on the directors to bring the suit on behalf of the corporation or show that demand was futile. *Id.* at 782.

> As a precondition for bringing a derivative action on behalf of the corporation, the shareholder "should show to the satisfaction of the court that he has exhausted all the means within his reach to obtain, within the corporation itself, the redress of his grievances, or action in conformity with his wishes. He must make an earnest, not a simulated effort, with the managing body of the corporation, to induce remedial action on their part, and this must be apparent to the court."

*Id.* at 789. (quoting *Hawes v. City of Oakland*, 104 U.S. 450, 460–461 (1881), *abrogated on other grounds by*, *Erie R. Co. v. Tompkins*, 304 U.S. 64 (1938)).

A plaintiff must plead with particularity the attempts that were made to secure board action before bringing a derivative suit. *Id.* at 782 (citing Cal. Corp. Code § 800, subd. (b)(2)).

(ii) Application

The Complaint alleges that Fahman breached his fiduciary duties of care, loyalty and good faith to the Company's stockholders. Dkt. 1 ¶¶ 84–93. The Complaint alleges that Fahman failed to "act in the best interests of [Philux] and to put the interests of [Philux] before" his own and "routinely mismanag[ed] the Company." *Id.* ¶¶ 86, 87.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 8:24-cv-02554-JAK (JDEx) | Date | September 05, 2025 |
| Title | Nicholas Schmitz v. Philux Global Group Inc. et al. | | |

Plaintiff's claim is derivative in nature because it is premised on injury to Philux, not to Plaintiff as an individual. Further, Plaintiff has not alleged any direct harm stemming from Fahman's alleged "mismanagement" of Philux.

Plaintiff has not met the statutory and procedural requirements for bringing a derivative claim against a corporation. Plaintiff has not pleaded with particularity "the attempts that were made to secure board action" before bringing this claim. *Bader*, 179 Cal. App. 4th at 782. Further, Plaintiff has not shown that he has exhausted all means with "the managing body of the corporation." *Id.* at 789. The Complaint alleges that Plaintiff and other shareholders sent letters to Fahman, but these alleged communications sought specific performance of stock sales, not corporate action to redress harms suffered by Philux. Dkt. 1 at 35–37.

For these reasons, the Complaint fails to sufficiently allege a claim for breach of fiduciary duty.

(3)     The Sum of Money at Stake in the Action

Under the fourth *Eitel* factor, "the court must consider the amount of money at stake in relation to the seriousness of Defendant's conduct." *PepsiCo*, 238 F. Supp. 2d at 1176. Default judgment is discouraged when the amount of money at stake in the litigation is "too large or unreasonable in light of defendant's actions." *Truong Giang Corp. v. Twinstar Tea Corp.*, No. C 06-03594 JSW, 2007 WL 1545173, at *12 (N.D. Cal. May 29, 2007); see also *Eitel*, 782 F.2d at 1472 (in light of parties' dispute as to material facts, entry of $3 million judgment would not be appropriate). However, where the sum of money at stake is tailored to the specific misconduct of the defendant, default judgment may be appropriate. *See Bd. of Trs. of the Sheet Metal Workers Health Care Plan v. Superhall Mech., Inc.*, No. C-10-2212-EMC, 2011 WL 2600898, at *2–3 (N.D. Cal. June 30, 2011) (the amount of unpaid contributions, liquidated damages and attorney's fees were appropriate because each amount was supported by sufficient evidence).

Plaintiff seeks $3,109,145 in compensatory damages, as well as punitive and exemplary damages. Dkt. 1 at 16. Plaintiff also requests injunctive relief, interest, attorney's fees and costs. *Id.*

Plaintiff allegedly paid Defendants a total amount of $109,500 for the Agreements. The remaining $2,999,645 in damages reflects the return on principal provided by the terms of the contracts, as well as liquidated damages. Thus, although the sum of money sought is tailored to the specific Agreements that were allegedly breached, the amounts provided for in the contracts are disproportionate to the harm of each breach. Accordingly, this request is "too large [and] unreasonable in light of [D]efendant's actions" and weighs against the entry of a default judgment. *Truong Giang Corp.*, 2007 WL 1545173, at *12.

(4)     The Possibility of a Dispute Concerning Material Facts

Upon entry of default, all facts pleaded in the operative complaint are deemed true, except those relating to damages. *TeleVideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917–18 (9th Cir. 1987). Although it is possible that Defendants could dispute some or all of the material facts in the course of this litigation, Defendants' failure to appear and defend is sufficient to support the inference that Defendants are unlikely to do so. Therefore, the fifth *Eitel* factor weighs in favor of granting the Motion.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 8:24-cv-02554-JAK (JDEx) | Date | September 05, 2025 |
| Title | Nicholas Schmitz v. Philux Global Group Inc. et al. | | |

(5) <u>Whether the Default Was Due to Excusable Neglect</u>

The sixth *Eitel* factor considers the possibility that the default resulted from excusable neglect of the non-moving party. Philux was served with the Complaint on December 3, 2024, and Fahman was served on December 23, 2024. Dkts. 9, 10. After Defendants failed to file any timely response, Plaintiff requested that the Clerk enter the default of Defendants. Dkt. 13. Default was entered as to Fahman on January 21, 2025 and as to Philux on January 24, 2025. Dkts. 14, 15. Since that time, Defendants have not appeared in the action, including by filing a request to set aside the default or to be permitted to present a response to the Complaint. As a result, there is no evidence that Defendants' failure to respond to the Complaint or otherwise appear in this action was due to excusable neglect. Therefore, this factor weighs in favor of granting the Motion.

(6) <u>The Strong Policy Favoring Decisions on the Merits</u>

The final *Eitel* factor considers the strong policy preference of deciding claims on the merits. This factor generally disfavors the entry of default judgment. "However, the mere existence of Fed. R. Civ. P. 55(b) indicates that 'this preference, standing alone, is not dispositive.' " *PepsiCo*, 238 F. Supp. 2d at 1177 (quoting *Kloepping v. Fireman's Fund*, No. C 94-2684 TEH, 1996 WL 75314, at *3 (N.D. Cal. Feb. 13, 1996)). Further, a defendant's decision not to defend the action precludes a decision on the merits. *Id.* Therefore, although this factor weighs against granting the Motion, it does not require that result. A contrary rule would mean that a default judgment could rarely, if ever, be entered.

\* \* \*

Based on a review and balancing of the *Eitel* factors, with respect to Plaintiff's breach of contract claims, factors one, five and six weigh in favor of granting default judgment as to the breach of Contract 1, Contract 2, Contract 3 and the Shares Amendment. Factors two and three, which are considered the "most important," also weigh in favor of granting default judgment as to these contracts. *Vietnam Reform Party v. Viet Tan-Vietnam Reform Party*, 416 F. Supp. 3d 948, 962 (N.D. Cal. 2019) (Eitel's second or third factors as "most important" for granting default judgment). Only factors four and seven weigh against granting default judgment. Accordingly, the Motion is **GRANTED-IN-PART** as to Plaintiff's claims for breach of Contract 1, Contract 2, Contract 3 and the Shares Amendment, subject to a separate assessment of the requested relief. As to Contract 4 and the Additional Contracts, the most important factors weigh against granting default judgment. Accordingly, the Motion is **DENIED-IN-PART** as to Contract 4 and the Additional Contracts.

As to Plaintiff's claims for promissory fraud, intentional misrepresentation and breach of fiduciary duty, factors one, five and six weigh in favor of granting default judgment. However, factors two and three, the "most important" factors, weigh against granting default judgment, as do factors four and seven. *Id.* Accordingly, the Motion is **DENIED WITHOUT PREJUDICE** as to these claims.

**IV.** <u>**Remedies Sought**</u>

"A default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings." Fed. R. Civ. P. 54(c). Further, the demand for relief must be specific. Fed. R. Civ. P. 8(a)(3).

Case 8:24-cv-02554-JAK-JDE   Document 21   Filed 09/05/25   Page 16 of 19   Page ID #:129

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | 8:24-cv-02554-JAK (JDEx) | Date | September 05, 2025 |
|---|---|---|---|
| Title | Nicholas Schmitz v. Philux Global Group Inc. et al. | | |

  A.  Damages

Through the Motion, Plaintiff seeks damages in the amount of $3,609,649, comprised of $3,109,145 in compensatory damages, $504 in costs and $500,000 in punitive and exemplary damages. Dkt. 17 at 16.

The $3,109,145 in compensatory damages is allocated as follows: $610,860 for Contract 1; $178,530 for Contract 2; $147,630 for Contract 3; $10,000 for Contract 4, $60,000 for the Shares Amendment; and $2,112,125 for the Additional Contracts. Dkt. 1 ¶¶ 42, 48, 54, 57, 62. Because Plaintiff has failed sufficiently to plead breach of Contract 4 and the Additional Contracts, Plaintiff has not shown an adequate basis for the damages sought as to those claims.

Plaintiff's requests for punitive and exemplary damages and injunctive relief are based on the dismissed promissory fraud, intentional misrepresentation and breach of fiduciary duty claims. Dkt. 17 at 16. Thus, these requests are not considered.

  1.  <u>Legal Standards</u>

"A default judgment must be supported by specific allegations as to the exact amount of damages asked for in the complaint." *Philip Morris USA,* 219 F.R.D. at 499. In addition, "Plaintiff must 'prove up' the amount of damages that [he] is claiming." *Id.* at 501. "In determining damages, a court can rely on the declarations submitted by the plaintiff or order a full evidentiary hearing." *Id.* at 498 (citing Fed. R. Civ. P. 55(b)(2)). "However, if the facts necessary to determine damages are not contained in the complaint, or are legally insufficient, they will not be established by default." *Id.* (citing *Cripps v. Life Ins. Co. of N. Am.*, 980 F.2d 1261, 1267 (9th Cir. 1992)).

California's Constitution sets a maximum allowable interest rate of "10 percent per annum." Cal. Const. art XV, § 1(2)(a). Contracts that exceed this 10 percent constitutional provision are deemed usurious. *See, e.g.*, *Junkin v. Golden. W. Foreclosure Serv., Inc.*, 180 Cal. App. 4th 1150, 1155 (2010) (defining contracts that exceed 10 percent per annum and do not meet any applicable constitutional, statutory or common law exception as usurious). There are exceptions for certain transactions and industries, but none of these exceptions is applicable here. Cal. Const. art XV, § 1.

The inclusion of a usurious provision "results, in effect, in a note payable at *maturity* without interest." *Grados v. Shiau*, 63 Cal. App. 5th 1042, 1056 (2021) (quoting *Epstein v. Grank*, 125 Cal. App. 3d 111, 122 (1981)) (emphasis added). These deficiencies "do not affect the right of the payee to recover the principal amount" of the agreement, however, and a lender is "entitled to interest at the legal rate" from the date of maturity to entry of judgment. *Epstein*, 125 Cal. App. 3d at 123; *see also* Cal. Civil Code § 3289(b) ("If a contract entered into after January 1, 1986, does not stipulate a legal rate of interest, the obligation shall bear interest at a rate of 10 percent per annum after a breach.").

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 8:24-cv-02554-JAK (JDEx) | Date | September 05, 2025 |
| Title | Nicholas Schmitz v. Philux Global Group Inc. et al. | | |

        2.      <u>Application</u>

            a)      Contracts 1, 2 and 3

Contract 1 had a principal amount of $24,000. Dkt. 1 ¶ 12. The request for $610,860 in damages for the breach of Contract 1 exceeds the 10 percent per annum allowable by the California Constitution. Cal. Const., art XV, § 1(2)(a). Therefore, Plaintiff's damages shall be determined by a calculation of the amount of interest earned from the date of maturity, August 27, 2024 (Dkt. 1 at 21), to the date of default, January 24, 2025 (Dkt. 15), plus the principal amount owed and other applicable fees. *Grados*, 63 Cal. App. 5th at 1056. Simple interest[1] accrued on a $24,000 loan, at a rate of 10 percent per annum, from August 27, 2024 to January 24, 2025 (150 days), totals $986.30. The "wiring fee" was $60. Dkt. 1 at 19. Adding these amounts together arrives at a total damages amount of $25,046.30.

Plaintiff is not entitled to receive the $10,800 "origination fee" because this would, in effect, bypasses the 10 percent per annum interest rate cap stated in the California Constitution. Permitting its recovery would, in effect, approve a 45 percent interest rate loan, payable after only a week, which is usurious under California law. *Junkin*, 180 Cal. App. 4th at 1155. For these reasons, Plaintiff is entitled to $25,075.38 in damages for the breach of Contract 1.

Recovery for the breaches of Contracts 2 and 3 are similarly limited to the principal amount owed, the applicable fees and a calculation of the amount of interest earned from the date of maturity to the date of default. The date of maturity for both Contracts 2 and 3 is August 27, 2024. Dkt. 1 at 25, 29. The date of default was January 24, 2025. Dkt. 15.

As to Contract 2, simple interest accrued on the $7,000 principal, at a rate of 10 percent per annum, over the course of 150 days, which totals $287.67. The "wiring fee" was $30. Dkt. 1 at 23. Together, these amounts total $7317.67 in damages.

As to Contract 3, simple interest accrued on the $6000 principal, at a rate of 10 percent per annum, over the course of 150 days, which totals $246.58. The "wiring fee" was $30. Dkt. 1 at 27. Together, these amounts total $6276.58 in damages.

As with Contract 1, granting recovery of the respective $3150 and $2100 in origination fees on Contracts 2 and 3 would, in effect, bypass the 10 percent per annum interest rate cap stated in the California Constitution. Thus, Plaintiff is limited to the recovery amounts stated above.

            b)      Shares Amendment

The Shares Amendment presents issues that are less clear. The Shares Amendment is an amendment to Contract 4. As discussed, Plaintiff has not sufficiently pleaded breach of Contract 4. However, the principal in Contract 4 must be considered in evaluating whether the amount of damages at issue in the Shares Amendment represents an improper penalty.

---

[1] The formula for simple interest is: $(P \times R \times T) \div 100$, where $P$ is the principal, $R$ is the rate per annum, and $T$ is the time in years. Courts have used simple interest as opposed to compound interest when calculating post-breach interest under California law. *See, e.g.*, *Hayes v. Scherer*, No. 8:21-cv-00389-SSS-ADSx, 2023 WL 5506002, at *9 (C.D. Cal. July 3, 2023).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 8:24-cv-02554-JAK (JDEx) | Date | September 05, 2025 |
| Title | Nicholas Schmitz v. Philux Global Group Inc. et al. | | |

Contract 4 was executed on February 7, 2024. Dkt. 1 at 33. The principal amount in Contract 4 was $10,000. *Id.* The Shares Amendment was executed on February 16, 2024, and provides for the issuance of sixty million shares of unencumbered Philux common stock, valued at $60,000. *Id.* Accordingly, the Shares Amendment represents an award of 600% in interest after only nine days. As with the origination fees in Contracts 1, 2 and 3, permitting recovery of the $60,000 under the Shares Amendment would implicitly approve a 600 percent interest rate loan, payable after only nine days, which is usurious under California law. *Junkin*, 180 Cal. App. 4th at 1155.

For these reasons, Plaintiff is not entitled to recover any amount of damages under the Shares Amendment.

          c)       Court and Service Fees

Through the Motion, Plaintiff seeks $504 in costs for the court filing fee and the service of summons. Dkt. 17 at 16. "In general, a prevailing party may recover attorney's fees only when a statute or an agreement of the parties provides for fee shifting." *Kirby v. Immoos Fire Prot., Inc.*, 53 Cal. 4th 1244, 1248 (2012). The Parties have agreed to such fee shifting. Contracts 1, 2 and 3 each provides that Philux "agree[d] to pay all costs and expenses, including reasonable attorney's fees, in case incurred by [Plaintiff] in collection of any amount due under this [Agreement.]" Dkt. 1 at 21, 25, 27. Accordingly, Plaintiff is entitled to court fees and costs of $504 based on the breach of contract claims.

      *                  *                  *

For the foregoing reasons, Plaintiff is awarded the following: $25,046.30 for the breach of Contract 1; $7317.67 for the breach of Contract 2; $6276.58 for the breach of Contract 3; and $504 in fees. These amounts total $38,640.55 in damages and $504 in associated fees.

Therefore, the Motion is **GRANTED-IN-PART** as to the request for awards of damages and associated fees.

**V.**      <u>Conclusion</u>

For the reasons stated in this Order, the Motion is **GRANTED-IN-PART** and **DENIED-IN-PART**.

Default judgment is entered against Defendants as to Plaintiff's claims of breach of Contracts 1, 2 and 3. Plaintiff is awarded $38,640.55 in damages and $504 in costs and fees, for a total monetary award of $39,144.55.

The Motion is **DENIED** as to all other claims and requested relief. Plaintiff is granted leave to amend the Complaint as to the dismissed claims. Within 21 days of the issuance of this Order, Plaintiff shall file and serve any amended complaint addressing the deficiencies identified in this Order as to those claims. If there is no timely response to the amended complaint, Plaintiff shall promptly seek the entry of default. If default is entered, Plaintiff shall file any renewed motion for default judgment within 14 days thereafter. If Plaintiff does not file an amended complaint within 21 days of the issuance of this Order, Plaintiff's remaining claims shall be dismissed with prejudice, *i.e.*, without leave to amend.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 8:24-cv-02554-JAK (JDEx) | Date | September 05, 2025 |
| Title | Nicholas Schmitz v. Philux Global Group Inc. et al. | | |

An entry of judgment as to the first cause of action is **DEFERRED**, pending the resolution of any further pleadings and motion practice by Plaintiff. Should Plaintiff elect not to file an amended Complaint, within 30 days of the issuance of this Order, Plaintiff shall lodge a proposed judgment that conforms with this Order.

**IT IS SO ORDERED.**

                                                         :

Initials of Preparer    DT